UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN A. MARSHALL,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,[1]<br>Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. CV 12-6360 JC<br><br>MEMORANDUM OPINION AND ORDER OF REMAND FOR IMMEDIATE PAYMENT OF BENEFITS<br><br>[DOCKET NOS. 31, 35] |

### I.　SUMMARY

On July 26, 2012, plaintiff John A. Marshall ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; July 30, 2012 Case Management Order ¶ 5.

---

[1] Carolyn W. Colvin is substituted as Acting Commissioner of Social Security pursuant to Fed. R. Civ. P. 25(d).

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED and the case is REMANDED for immediate payment of benefits.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On March 15, 2004, plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits. (Administrative Record ("AR") 93, 660). Plaintiff asserted that he became disabled on or about June 20, 2001, due to "HIV – seizures." (AR 93, 105, 660). On April 30, 2006, an Administrative Law Judge ("First ALJ") examined the medical record and heard testimony from plaintiff (who was represented by counsel). (AR 641-56). On May 12, 2006, the First ALJ determined that plaintiff was not disabled through the date of the decision. (AR 55-59).

On January 29, 2007, the Appeals Council granted review and vacated the May 12, 2006 decision, in part, because the step four assessment that plaintiff could perform "the full range of light work" conflicted with the findings of the First ALJ at step two that plaintiff had severe impairments of "ataxia, history of seizures and deficits in motor skills" – which, the Appeals Council noted, commonly involve the need for seizure precautions, balance problems, and dexterity difficulties. (AR 62-63). The Appeals Council remanded the matter with instructions to, *inter alia*, reevaluate plaintiff's residual functional capacity "and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations." (AR 62-63) (citing 20 C.F.R. §§ 404.1527(f), 416.927(f); Social Security Ruling ("SSR") 96-8p[2]). The First ALJ again examined the medical record and heard testimony from plaintiff on June 27, 2007 and November 15, 2007. (AR 612-40)

---

[2]Social Security rulings are binding on the Administration. Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

On April 11, 2008, the First ALJ again determined that plaintiff was not disabled through the date of the decision. (AR 15-23). The Appeals Council denied plaintiff's application for review of that decision. (AR 6).

On December 21, 2009, this Court entered judgment reversing and remanding the case for further proceedings essentially because it determined that the First ALJ had materially erred in failing to consider the opinions of plaintiff's treating physician, Dr. J. Scott Morrow. (AR 681-90). The Appeals Council in turn remanded the case to a different Administrative Law Judge ("Second ALJ") for further administrative proceedings. (AR 693-95).

On September 8, 2011, the Second ALJ examined the medical record, heard brief testimony from plaintiff, ordered a consultative psychological evaluation of plaintiff, and continued the hearing. (AR 886-93). At a supplemental hearing on February 8, 2012, the Second ALJ heard further testimony from plaintiff (who was represented by counsel) and a vocational expert. (AR 869-85).

On March 28, 2012 the Second ALJ determined that plaintiff was not disabled through the date of the decision. (AR 660-72). Specifically, the Second ALJ found: (1) plaintiff suffered from the following severe impairments: history of seizure disorder and human immunodeficiency virus infection ("HIV") (AR 664); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 666-67); (3) plaintiff retained the residual functional capacity to perform light work[3] (20 C.F.R. §§ 404.1567(b), 416.967(b)) with additional limitations[4] (AR 667); (4) plaintiff could not perform

---

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." See SSR 83-10.

[4]The Second ALJ determined that plaintiff: (i) could not climb ladders, ropes or scaffolds; (ii) could frequently engage in gross and fine manipulation with both hands;

(continued...)

3

his past relevant work (AR 670); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically back office helper and mail sorter (AR 671); and (6) plaintiff's allegations regarding his limitations were not credible to the extent they were inconsistent with the medical evidence taken as a whole (AR 668) (citing Exhibits 1F through 17F [AR 156-607, 762-868]).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

///

---

[4](...continued)
(iii) needed to work in an environment that is quiet and does not involve more than occasional exposure to moisture or pulmonary irritants; (iv) could not work in an environment where he could be exposed to hot or cold temperature extremes (due to his prior traumatic brain injury ("TBI")); and (v) could not work in a job that involves any contact with members of the public due to plaintiff's speech impediment. (AR 667).

|     |     |     |
| --- | --- | --- |
| 1   | (2) | Is the claimant's alleged impairment sufficiently severe to limit |
| 2   |     | the claimant's ability to work?  If not, the claimant is not |
| 3   |     | disabled.  If so, proceed to step three. |
| 4   | (3) | Does the claimant's impairment, or combination of |
| 5   |     | impairments, meet or equal an impairment listed in 20 C.F.R. |
| 6   |     | Part 404, Subpart P, Appendix 1?  If so, the claimant is |
| 7   |     | disabled.  If not, proceed to step four. |
| 8   | (4) | Does the claimant possess the residual functional capacity to |
| 9   |     | perform claimant's past relevant work?  If so, the claimant is |
| 10  |     | not disabled.  If not, proceed to step five. |
| 11  | (5) | Does the claimant's residual functional capacity, when |
| 12  |     | considered with the claimant's age, education, and work |
| 13  |     | experience, allow the claimant to adjust to other work that |
| 14  |     | exists in significant numbers in the national economy?  If so, |
| 15  |     | the claimant is not disabled.  If not, the claimant is disabled. |

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

**B.   Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457

(9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

**IV. DISCUSSION**

    **A. The Second ALJ Materially Erred in Assessing the Severity of Plaintiff's Impairments and Evaluating the Medical Opinion Evidence**

Plaintiff contends that a remand is warranted, in part, because the Second ALJ failed to list gait ataxia (*i.e.*, difficulty coordinating the movements required for normal ambulation) as a severe impairment at step two, failed properly to evaluate the medical opinion evidence, and consequently posed an incomplete hypothetical question to the vocational expert. (Plaintiff's Motion at 20-28). The Court agrees. As the Court cannot find such errors harmless, a remand is warranted.

///
///
///
///
///

### 1. Pertinent Law

#### a. Step Two

At step two of the sequential evaluation process, plaintiff has the burden to present evidence of medical signs, symptoms and laboratory findings[5] that establish a medically determinable physical or mental impairment that is severe, and that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)). Substantial evidence supports an ALJ's determination that a claimant is not disabled at step two where "there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment." Id. (quoting SSR 96-4p).

Step two is "a de minimis screening device [used] to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Applying the normal standard of review to the requirements of step two, a court must determine whether an ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (citation omitted); see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here."). An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight

---

[5] A medical "sign" is "an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical and laboratory diagnostic techniques[.]" Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005) (quoting SSR 96-4p). A "symptom" is "an individual's own perception or description of the impact of his or her physical or mental impairment(s)[.]" Id. (quoting SSR 96-4p).

abnormality that has "no more than a minimal effect on an individual's ability to work." Webb, 433 F.3d at 686 (citation omitted).

### b. Medical Opinion Evidence

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[6] See id. In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal

---

[6]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

quotations omitted). The ALJ can reject the opinion of a treating physician in favor of another conflicting medical opinion, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Id. (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion). "The ALJ must do more than offer his conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct." Id. "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). These standards also apply to opinions of examining physicians. See Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting Lester, 81 F.3d at 830-31); Andrews v. Shalala, 53 F.3d 1035, 1042-44 (9th Cir. 1995).

### c.  Step Five

If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show, at step five, that the claimant can perform some other work that exists in "significant numbers" in the national economy (whether in the region where such individual lives or in several regions of the country), taking into account the claimant's residual functional capacity, age, education, and work experience. Tackett, 180 F.3d at 1100 (citing 20 C.F.R § 404.1560(b)(3)); 42 U.S.C. § 423(d)(2)(A). Where, as here, a claimant suffers from both exertional and nonexertional limitations, the Grids do not mandate a finding of disability based solely on the claimant's exertional limitations, and the

claimant's non-exertional limitations are at a sufficient level of severity such that the Grids are inapplicable to the particular case, the Commissioner must consult a vocational expert.[7]  Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007); see Lounsburry v. Barnhart, 468 F.3d 1111, 1116 (9th Cir.), as amended (2006); Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989).

The vocational expert's testimony may constitute substantial evidence of a claimant's ability to perform work which exists in significant numbers in the national economy when the ALJ poses a hypothetical question that accurately describes all of the limitations and restrictions of the claimant that are supported by the record.  See Tackett, 180 F.3d at 1101; see also Robbins, 466 F.3d at 886 (finding material error where the ALJ posed an incomplete hypothetical question to the vocational expert which ignored improperly-disregarded testimony suggesting greater limitations); Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001) ("If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value."); Embrey, 849 F.2d at 422 ("Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant . . . .") (emphasis in original; citation omitted).

### 2. Pertinent Medical Evidence

In a Physician Statement dated October 28, 2002, Dr. J. Scott Morrow, plaintiff's treating physician, essentially opined that plaintiff could lift and carry no weight, could stand/walk 2-4 hours in an 8-hour day, and could sit less than 6 hours in an 8-hour day with breaks.  (AR 193-96).

On July 11, 2011 Dr. Ursula Taylor, a state-agency examining physician, performed an Independent Internal Medicine Evaluation which included an

---

[7]The severity of limitations at step five that would require use of a vocational expert must be greater than the severity of impairments determined at step two.  Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).

examination of plaintiff. (AR 763-68). In her July 2011 report, Dr. Taylor diagnosed plaintiff with traumatic brain injury ("TBI") and HIV, observed that plaintiff had "trouble with balance and coordination" (*i.e.*, plaintiff appeared "somewhat generally unsteady," at one point "almost fell off the examination table," had trouble performing a "tandem walk," "ambulated with only mild antalgia," and had mild leg stiffness which suggested possible "movement disorder"), and opined, in pertinent part, that due to a "history of traumatic brain injury, seizures and trouble with balance and coordination," plaintiff (i) could only lift/carry 20 pounds occasionally and 10 pounds frequently; (ii) could walk and stand up to four hours out of an eight-hour day, but was limited to at most standing/walking 20 minutes at any one time "due to general unsteadiness"; (iii) could not balance; (iv) could occasionally stoop, kneel, crouch, and crawl; (v) could occasionally climb stairs and ramps; (vi) could never climb ladders and scaffolds; (vii) was limited to frequent reaching in all directions and above shoulder level, gross handling, fine fingering, feeling, pushing and pulling in both hands; and (viii) was limited to frequent use of feet. (AR 767-68).

The Second ALJ found that plaintiff had a history of prior right leg fracture which was "not [] severe" because the record did not show that plaintiff experienced "any pain or other functional limitation related to [the] condition." (AR 665). The Second ALJ stated that his finding was consistent with the report of a January 31, 2003 Internal Medicine Examination of plaintiff, in which Dr. Raymond Lee, a state-agency examining physician, stated that while plaintiff had "a mild noticeable slight limp with gait," plaintiff denied having any related pain, plaintiff had no evidence of obvious bony abnormalities on examination, and there were no physical limitations related to plaintiff's limp. (AR 665) (citing Exhibit 3F at 4 [AR 172]). The Second ALJ stated that his finding was also supported by the July 2011 opinions of Dr. Taylor, who "did not diagnose [plaintiff] with any medical condition related to [plaintiff's] lower extremities, and did not report that

[plaintiff exhibited] any physical functional limitations related to his lower extremities." (AR 665) (citing Exhibit 10F at 4-5 [AR 766-67]).

### 3. Analysis

The Court finds that a remand is warranted because the Second ALJ erred in assessing the severity of plaintiff's impairments and evaluating the medical opinion evidence, and the errors cannot be deemed harmless since the Second ALJ did not adequately account for all of plaintiff's medical impairments in later steps of the sequential evaluation process. Cf. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (failure to address particular impairment at step two is harmless if ALJ fully evaluates claimant's medical condition in later steps of sequential evaluation process).

First, plaintiff has presented evidence which suggests that gait ataxia was a severe impairment. For example, as noted above, Dr. Taylor found that plaintiff had limitations in his abilities to walk, stand and do postural activities due to trouble with balance and coordination. (AR 766-67). In a November 29, 2004 Physician Statement, Dr. Kalvin Yu, another treating physician, stated that plaintiff had "periodic gait ataxia – will not improve per neurologist" and opined that plaintiff had "mild physical limitations" with "documented cerebellar degeneration which may affect his long-term motor skills." (AR 193-94). Dr. Miguel Valdas-Sueiras, also a treating physician, noted plaintiff's coordination as "slowed" and that plaintiff's gait reflected "mild difficulty" with tandem walking and "dystonic posturing with ambulation." (AR 221, 239, 296, 541). A physician at the Venice Family Clinic also noted that plaintiff had a "wide based" gait and decreased ambulation bilaterally. (AR 813, 817). In light of the foregoing, the Court cannot conclude that plaintiff's gait ataxia had no more than a minimal effect on plaintiff's ability to work.

Second, the Second ALJ's decision does not expressly address plaintiff's alleged gait ataxia. The Second ALJ did note that plaintiff had a "history of []

prior right leg fracture." Nonetheless, the Second ALJ found the impairment non-severe in part because Dr. Taylor purportedly "did not report that [plaintiff] exhibit[ed] any physical functional limitations related to his lower extremities." (AR 665) (citing Exhibit 10F at 4-5 [AR 766-67]).  As noted above, however, Dr. Taylor opined that plaintiff had multiple functional limitations related to his lower extremities (*i.e.*, walking, standing and postural movement) due, in part, to plaintiff's apparent "trouble with balance and coordination."  (AR 767).  The Second ALJ's incorrect characterization of the medical evidence calls into question the validity of both the Second ALJ's evaluation of the severity of plaintiff's impairments and the Second ALJ's decision as a whole.  See, e.g., Regennitter v. Commissioner, 166 F.3d 1294, 1297 (9th Cir. 1999) (A "specific finding" that consists of an "inaccurate characterization of the evidence" cannot support an adverse credibility determination); see also Valenzuela v. Astrue, 247 Fed. Appx. 927, 929 (9th Cir. 2007) (finding ALJ's credibility determination unsupported by substantial evidence where it was based in part on "inaccurate characterization" of claimant's testimony); Lesko v. Shalala, 1995 WL 263995, *7 (E.D.N.Y. Jan. 5, 1995) ("inaccurate characterizations of the Plaintiff's medical record" found to constitute reversible error).  Therefore, the Second ALJ's failure to address plaintiff's gait ataxia at step two of the sequential evaluation process constituted error.  See Webb, 433 F.3d at 686-87 (citations omitted).

Third, the Second ALJ failed properly to consider significant and probative medical opinion evidence which, in part, addressed plaintiff's medical condition (*i.e.*, gait ataxia).  For example, although the Second ALJ stated that he "generally concur[red]" with Dr. Taylor's July 2011 evaluation of plaintiff (AR 665), the Second ALJ's residual functional capacity assessment for plaintiff did not account for several functional limitations Dr. Taylor identified for plaintiff.  For example, Dr. Taylor opined that plaintiff could "walk and stand no more than four hours out of an eight-hour day due to trouble with balance and coordination and general

unsteadiness" and that plaintiff could stand and walk for no more than 20 minutes at any one time, again "due to general unsteadiness. . . ." (AR 767). In contrast, the Second ALJ determined that plaintiff could perform work at the "light exertional level" (AR 667), which generally involves standing or walking for up to six hours out of an eight-hour workday. See 20 C.F.R. §§ 404.1567(b), 416.967(b) (light work "requires a good deal of walking or standing"); SSR 83-10 at *5-*6 ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."). The Second ALJ's residual functional capacity assessment also did not limit plaintiff to standing/walking only 20 minutes at a time, and did not account for Dr. Taylor's opinions that plaintiff "should not be doing balancing" and could only frequently use his feet. (Compare AR 667 with AR 767).

In addition, although the Second ALJ also stated that he concurred with the evaluations provided by Dr. Morrow (AR 669), the Second ALJ failed properly to consider such evaluations and/or account in plaintiff's residual functional capacity assessment for several functional limitations identified therein. For example, like the First ALJ, the Second ALJ here erroneously attributes to Dr. Morrow the opinions in Dr. Yu's November 29, 2004 physician statement. (AR 193-94). Even so, Dr. Yu opined that plaintiff's lifting/carrying was limited to less than 10 pounds frequently (not up to 10 pounds as the Second ALJ notes). (Compare AR 193-94 with AR 669). Moreover, in an October 28, 2002 Physician Statement, Dr. Morrow opined that plaintiff could not lift or carry any weight at all, could only stand/walk for 2-4 hours in an 8-hour day, and could sit less than 6 hours in an 8-hour day with breaks. (AR 195-96). Here, the Second ALJ's residual functional capacity assessment does not account for Dr. Morrow's significant functional

///
///
///

limitations – which are inconsistent with even sedentary work[8] – even though this Court previously remanded the case to afford the Commissioner an opportunity properly to consider and weigh Dr. Morrow's October 28 Physician Statement with the other treating and examining opinions of record. (AR 687-88). The Second ALJ's failure to account for the foregoing medical opinion evidence was itself legal error. See Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (An ALJ must provide an explanation when he rejects "significant probative evidence.") (citation omitted).

Fourth, since the hypothetical question the Second ALJ posed to the vocational expert did not include the aforementioned limitations and restrictions (AR 667), the Court cannot conclude that the vocational expert's testimony based on such incomplete hypothetical, which the Second ALJ adopted, was substantial evidence supporting the Second ALJ's determination at step five that plaintiff could perform any of the representative occupations. See Tackett, 180 F.3d at 1101 (vocational expert's testimony may constitute substantial evidence of a claimant's ability to perform work which exists in significant numbers in the national economy only when ALJ poses a hypothetical question that accurately describes all of the limitations and restrictions of the claimant that are supported by the record); see also Robbins, 466 F.3d at 886 (finding material error where the ALJ posed an incomplete hypothetical question to the vocational expert which ignored improperly-disregarded testimony suggesting greater limitations); Lewis, 236 F.3d at 517 ("If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value."); Embrey,

---

[8]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a). "[A]t the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." See SSR 83-10.

849 F.2d at 422 ("Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant . . . .") (emphasis in original; citation omitted).

Finally, the Court cannot find the Second ALJ's errors harmless. The Court cannot conclude that the vocational expert would have opined (or that the Second ALJ relying upon such opinion would have determined) that plaintiff could perform other work which exists in significant numbers in the national economy if the Second ALJ had included in the hypothetical question posed to the vocational expert the significant limitations found by Dr. Morrow which, as noted above, essentially precluded even sedentary work. Similarly, Dr. Taylor's opinions that plaintiff could stand and walk for no more than 20 minutes at any one time, together with Dr. Morrow's limitations, also suggest that plaintiff might need to take additional unscheduled breaks during an eight-hour workday. At the February 8, 2012 hearing, however, the vocational expert testified that there would be no work available if plaintiff (or a hypothetical individual with the same characteristics as plaintiff) required three additional 10 minute breaks in a day. (AR 884). Defendant points to no persuasive evidence in the record which otherwise could support the Second ALJ's determination at step five that plaintiff was not disabled. See Stout, 454 F.3d at 1055 (ALJ's error harmless where it is "inconsequential to the ultimate nondisability determination").

### B. Reversal and Remand for Immediate Payment of Benefits Is Appropriate

When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted); Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (same) (citing id.). Even so, the choice whether to reverse and remand for further administrative proceedings, or to reverse and

1  remand for immediate payment of benefits is within the discretion of the Court.
2  See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 531 U.S. 1038
3  (2000); Reddick v. Chater, 157 F.3d 715, 728 (9th Cir. 1998).  Where, like here,
4  an ALJ improperly rejected medical opinion evidence, the erroneously rejected
5  evidence should be credited and an immediate payment of benefits directed (rather
6  than a remand for further proceedings) when:  "(1) the ALJ failed to provide
7  legally sufficient reasons for rejecting the evidence; (2) there are no outstanding
8  issues that must be resolved before a determination of disability can be made; and
9  (3) it is clear from the record that the ALJ would be required to find the claimant
10 disabled were such evidence credited."  Benecke v. Barnhart, 379 F.3d 587, 593
11 (9th Cir. 2004) (citations omitted); see also Harman, 211 F.3d at 1178 ("[T]he
12 necessity for further proceedings properly is evaluated under the general rule that
13 remand is appropriate if enhancement of the record would be useful.").
14      Here, the Court concludes that plaintiff's case should be reversed and
15 remanded for immediate payment of benefits.  Although defendant argues, in a
16 conclusory fashion, that the Court should remand the case for further
17 administrative proceedings (Defendant's Motion at 30), such arguments do not
18 persuade the Court that a remand would be fruitful or fair.  First, as discussed
19 above, the Second ALJ failed to account for significant and probative medical
20 evidence in which doctors essentially opined that plaintiff suffered from disabling
21 impairments.  Second, defendant points to no outstanding issues that must be
22 resolved before a determination of disability can be made in this case.  Third, as
23 noted above, the record reflects that a person who suffered the significant
24 limitations identified by Drs. Taylor and Morrow would be precluded from all
25 work.  Therefore, it is clear that the Second ALJ would be required to find plaintiff
26 disabled if the Second ALJ fully credited such opinion evidence.
27      It would not be fair to plaintiff to afford the Commissioner a third
28 opportunity properly to evaluate the medical opinion evidence and assess

plaintiff's residual functional capacity – issues that were material to the Second ALJ's ultimate disability determination.  See, e.g., Benecke, 379 F.3d at 595 (allowing Commissioner a second chance to decide the "central issue" in claimant's case "create[s] an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.") (citation omitted); Moisa, 367 F.3d at 887 ("The Commissioner . . . should not have another opportunity to show that [plaintiff] is not credible any more than [plaintiff], had he lost, should have an opportunity for remand and further proceedings to establish his credibility.") (citation omitted); Grayson v. Astrue, 2012 WL 4468406, *8 (E.D. Cal. Sep. 25, 2012) (remanding for payment of immediate benefits where ALJ failed to provide legally sufficient reasons for rejecting treating physician's opinions and the ALJ would have been required to find plaintiff disabled if such opinions were credited).

## V.    CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed and the case is remanded for immediate payment of benefits.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   June 30, 2013

                                                                                      /s/  
                                          Honorable Jacqueline Chooljian  
                                          UNITED STATES MAGISTRATE JUDGE